### R. P. ROBERTSON ET AL. V. JOSEPH HUNT.

#### No. 6238.

1. **Sale of Personal Property.**—A sale of cattle was complete when the particular property was identified and pointed out, part payment made, and a bill of sale given in which it was stipulated that the deferred payment was to be secured by the property sold. The fact that the property thus inspected and partially paid for was to be delivered at a future time and place does not prevent the title from passing when the written contract clearly shows that the contracting parties intended that the sale should be regarded as consummated. See opinion for facts.

2. **Joint Trespassers—Notice.**—A joint recovery may be had for the fraudulent conversion of personal property against the original wrongdoer and each purchaser from him in succession who at the time of the purchase had notice of the fraud.

APPEAL from Tom Green. Tried below before Hon. Wm. Kennedy. The opinion gives a statement.

*R. H. Looney,* for appellants.— 1. A sale of chattels is not complete and the title does not pass from the seller to the buyer so long as anything is to be done by the seller to the property which is the subject of the sale. Woods v. Half, 44 Texas, 634; Morgan v. Taylor, 32 Texas, 365; 1 Pars. on Con., p. 44; Benj. on Sales, secs. 308–311.

2. Delivery either actual or constructive is absolutely essential to the completion of a contract of sale. Morgan v. Taylor, 32 Texas, 366; Allen v. Melton, 64 Texas, 218; Benj. on Sales, p. 670, note.

3. To constitute a constructive or range delivery by the execution and delivery of a bill of sale the entire mark and brand of the cattle must be sold, and the title does not pass from the seller to the buyer until such bill of sale is filed for record. Allen v. Melton, 64 Texas, 218; Woods v. Half, 44 Texas, 634; Cleveland v. Williams, 29 Texas, 211; Woods v. McGee, 7 Ohio St., 128; Abbott v. Atkinson, 21 La. Ann., 414; Preston v. Locke, 12 Am. Rep., 55; Keihn v. Tupper, 52 N. Y., 550; Hahn v. Fredrick, 18 Am. Rep., 119; Benj. on Sales, secs. 308–311, 318–324, 355, and notes.

4. The court erred in overruling defendants R. P. Robertson's and J. E. Darlington's motion for a new trial, and especially as to defendant

R. P. Robertson, because there was no evidence that said defendant participated in or in any way assisted in the conversion of plaintiff's property, or that said R. P. Robertson received any of the proceeds of any of the sales of any of the property in controversy.

*Sexton & Smith,* for appellee.— 1.   A sale of chattels is complete whenever it is the intention of the parties that the title to them shall pass from vendor to vendee.

2.   In this case it is apparent that the whole herd of cattle in Harris' pasture was sold to the appellee.   He was taken to the pasture and the cattle were shown to him.   All of the L V brand were shown and sold to him.   The contract as to delivery was merely that the defendant W. M. Robertson would deliver to appellee at a future day the cattle which he (Robertson) then sold to appellee.

3.   A sale of chattels is complete whenever the chattels sold are clearly identified.   The cattle sold in this case were clearly identified.   Cleveland v. Williams, 29 Texas, 210; Anderson & Galbraith v. Levyson, 1 Ct. App. C. C., sec. 927; Crofoot v. Brunett, 2 Coms., 260; Marble v. Moore, 102 Mass., 444; Foster v. Ropes, 111 Mass., 15, 16; Benj. on Sales, 3 Am. ed., secs. 308, 309–311 (specially note c), 313–317, 319, note c; Story on Con., sec. 800; 1 Pars. on Con., 529, 530.

4.   The court below did not err in overruling appellants' motion for a new trial.   The case of plaintiff below (appellee) was clearly made out, and appellants offered no evidence whatever in their own behalf.

ACKER, PRESIDING JUDGE.—Joseph Hunt brought this suit against W. M. Robertson, R. P. Robertson, and J. E. Darlington, to recover the value of 193 steers alleged to have been the property of plaintiff and fraudulently converted by the defendants.   The trial by jury resulted in verdict and judgment for plaintiff for $2360, from which defendants R. P. Robertson and Darlington appealed.

It is contended that the court erred in giving the following charge. "You are instructed that if you find from the evidence that on the 11th day of November, 1884, there was in the pasture of L. B. Harris not exceeding 193 head of two-year-old steers branded L V on the left hip, the instrument of that date purporting to be signed by W. M. Robertson in evidence before you is a valid conveyance of the title from said Robertson to plaintiff Hunt." It appears from the evidence that W. M. Robertson had at the date mentioned from 175 to 193 cattle of the kind described in the pasture of L. B. Harris, they being all the cattle in the pasture of that description, and that about that date he went with Hunt to the pasture, rounded up the cattle, and sold them to Hunt for $19 per head, and executed and delivered to Hunt a bill of sale, receiving at the time $2000 in cash from Hunt.   The bill of sale is as follows:

"Know all men by these presents, that I, Will Robertson, of Colorado, Mitchell County, have this day, in consideration of $2000 to me in hand paid, and for such other consideration as may hereafter be paid, bargained, sold, and agreed to deliver at the stock pens, Colorado, Texas, to Joseph Hunt, 175 head of two-year-old steers branded L V on left hip; and I agree to deliver as many as I can gather, up to 193 head, between the 20th and 25th days of March, 1885, at $19 per head. The balance due over and above the $2000 above mentioned to be paid on day of delivery and to be secured to Will Robertson by the cattle in the pasture."

We think the evidence shows that it was the understanding and intention of the parties that the title to the cattle passed on payment of the $2000 and the execution of the bill of sale. If it was not so understood and intended, we are not able to discover any reason for Robertson stipulating in the bill of sale that he was to be secured for the balance of the purchase money by the cattle. If the title did not pass, and they were still his cattle, he needed no security for the balance of the purchase money. The facts adduced make quite a different case from a contract to sell and deliver at some future day. Here particular cattle were pointed out, identified, and sold by proper transfer of title, but left by the terms of the contract of sale in the hands of the vendor as bailee for the vendee, to be kept during the winter and to be delivered to the owner at a designated time and place.

We do not think the court erred in giving the charge complained of by the first assignment of error.

The other assignments of error presented are: "The court erred in overruling defendants R. P. Robertson's and J. E. Darlington's motion for new trial, and especially as to defendant R. P. Robertson, because there was no evidence that said defendant participated in or in any way assisted in the conversion of plaintiff's property, or that said R. P. Robertson received any of the proceeds of any of the sales of any of the property in controversy.

"The court erred in overruling said motion for a new trial in this, there was no evidence before the court that either of the defendants R. P. or J. E. Darlington were parties to any contract with plaintiff, or that they in any manner or way injured or damaged plaintiff or his property."

On November 20, 1884, W. M. Robertson acknowledged the execution of a bill of sale, dated October 1, 1884, to R. P. Robertson for the identical cattle on which he had received $2000 in cash, and which he had sold and transferred to Hunt by proper bill of sale only a few days before.

On the 5th day of March, 1885, R. P. Robertson executed a bill of sale to J. E. Darlington for the identical cattle, and Darlington took possession and disposed of them.

It clearly appears from the testimony of Allan Maclean and John Harris that Darlington was fully informed of the negotiations between W..

M. Robertson and Hunt for the sale of the cattle, and knew of the sale at the time it was made, and encouraged the transaction, as one witness testified, with the expectation of receiving from the proceeds of the sale a sum of money which W. M. Robertson owed him.   H. B. Smoot, cashier of the bank in which the $2000 paid by Hunt to W. M. Robertson was deposited, testified that R. P. Robertson received $1250, and R. P. Robertson & Co. $220, and that W. M. Robertson received the balance of the $2000 so paid.   There was no evidence contradicting the testimony of the witnesses Maclean, Harris, and Smoot.

The evidence abundantly sustains the verdict, and we are of opinion that the judgment of the court below should be affirmed.

*Affirmed.*

Adopted May 20, 1890.