GARDEN VALLEY MERCANTILE CO. et al. v. FALKNER et al. (No. 1608.)

(Court of Civil Appeals of Texas. Texarkana. July 5, 1916. Rehearing Denied Oct. 5, 1916.)

1. VENUE ⊜⇒18—ACTION FOR CONVERSION.
   Action for conversion of personal property may be brought in the county of plaintiff's residence if one of the defendants has converted some of the property there.
   [Ed. Note.—For other cases, see Venue, Cent. Dig. § 32; Dec. Dig. ⊜⇒18.]

2. LANDLORD AND TENANT ⊜⇒242 — LANDLORD'S LIENS—FURNISHING GOODS—"FURNISHED."
   A landlord buying a note under agreement that, if the owner of mules would sell them to the landlord's tenant and take the tenant's note for the purchase price, he would buy the note at its face value, has no landlord's lien on the mules, they not being "furnished" by him within article 5475, Vernon's Sayles' Ann. Civ. St. 1914, as to landlord's lien.
   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 976, 979–981; Dec. Dig. ⊜⇒242.
   For other definitions, see Words and Phrases, First and Second Series, Furnished.]

3. LANDLORD AND TENANT ⊜⇒242 — LANDLORD'S LIENS—FURNISHING GOODS—"FURNISHED."
   A landlord allowing his tenant to keep a quantity of corn due as rent, instead of delivering it to him, in order that the tenant might use it during the next year for seed, was not entitled to a lien for such corn; it not being "furnished" within article 5475, Vernon's Sayles' Ann. Civ. St. 1914, as to landlord's lien.
   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 976, 979–981; Dec. Dig. ⊜⇒242.]

Appeal from Wood County Court; R. E. Bozeman, Judge.

Action by A. J. Falkner and others against the Garden Valley Mercantile Company and others. From judgment for plaintiffs, the named defendant and others appeal. Affirmed as to defendant T. E. Calhoun, and reformed and affirmed as to other defendants.

Simpson, Lasseter & Gentry, of Tyler, for appellants. Jones & Jones, of Mineola, and Harris & Britton, of Quitman, for appellees.

WILLSON, C. J. [1] The suit was by Falkner (1) against his tenant, T. E. Calhoun, to recover sums he claimed the latter owed him as rent, and for supplies furnished to make crops grown by the tenant on the land; and (2) against the Garden Valley Mercantile Company, a firm composed of himself (Falkner), S. B. Tunnell, G. E. Browning, W. C. Head, G. M. Terry, and S. P. Vesey, and Tarver, Steele & Co., a firm composed of C. L. Tarver and L. B. Steele, to recover damages for a conversion by them, as alleged, of certain property belonging to the tenant on which he (Falkner) claimed to have a landlord's lien. It was commenced in Wood county, where Falkner resided, and where, he alleged, the conversion complained of occurred. None of the defendants resided in that county. Tunnell, Browning, Terry, and Head, in a plea duly filed, claimed a privilege they asserted to be sued in Smith county, where they, respectively, resided, instead of in Wood county. Whether the plea should have been sustained depended on whether it appeared that the mercantile company or Tarver, Steele & Co. were guilty of a conversion of the cotton in Wood county. It appeared from the testimony that the rented land was in Smith county. By the terms of the contract between Falkner and Calhoun

the former was to receive as rent one-third of the corn and one-fourth of the cotton and cotton seed grown by the latter on the land. The property on which Falkner claimed a landlord's lien and which he claimed the mercantile company and Tarver, Steele & Co. converted consisted of corn, cotton seed, and seven bales of cotton grown by Calhoun on the land, and two mules purchased by him of one Kindle. Calhoun, having mortgaged the property to the mercantile company, turned same over to said company with instructions to sell it and credit the claim the company had against him with the proceeds after paying out of same the sum he owed to Falkner as rent. At the time the mercantile company took possession of the property it was in Smith county, where the company afterwards sold the mules. It carried the seven bales of cotton to Wood county, and there sold same to Tarver, Steele & Co., who, when they purchased, knew that Falkner claimed a landlord's lien on the property. The mercantile company paid to Falkner one-fourth of the sum realized by the sale of the cotton as the part thereof he was entitled to as rent.

The contention made that on the facts stated the court should have peremptorily instructed the jury to find in favor of the plea is overruled. It may be the testimony was not sufficient to support a finding that the conversion by the mercantile company occurred in Wood county, but it was sufficient to show that Tarver, Steele & Co. converted the cotton in that county. As, therefore, Falkner had a right to sue that company in Wood county and to make the mercantile company a party to the suit, the finding against the plea of privilege was not error. Cobb v. Barber, 92 Tex. 309, 47 S. W. 963; Robertson v. Hunt, 77 Tex. 321, 14 S. W. 68; 38 Cyc. 2055.

The judgment was in favor of Falkner against Calhoun for $547.11, against the mercantile company and its members other than himself for a like sum, and against Tarver, Steele & Co. for $285, the value of the seven bales of cotton purchased by them of the mercantile company. Calhoun has not appealed, and the judgment will not be disturbed so far as it is against him.

The judgment against the mercantile company and its members was based on findings that they had converted corn, cotton seed, seven bales of cotton, and two mules on which Falkner claimed a landlord's lien.

[2] The mercantile company claimed that it appeared as a matter of law that Falkner did not have a lien on the mules. The contention should have been sustained. It appeared that Calhoun needed the mules to make crops on the rented land. The owner of the mules, one Kindle, wanted $325 in cash for them. Calhoun was unable then to pay the price demanded. Falkner agreed, if Kindle would let Calhoun have the mules and

take his note for the purchase price, he (Falkner) would buy the note of Kindle at its face value. Thereupon on February 5, 1913, Kindle sold the mules to Calhoun, taking his promissory note for the purchase price, $325, payable to him (Kindle) November 1, 1913, and stipulating for interest from its date at the rate of 10 per cent. per annum and for 10 per cent. additional if it was not paid at its maturity and was placed in the hands of an attorney for collection. February 20, 1913, Kindle by an indorsement on the note transferred it to Falkner, who then paid him its face value. It is plain, we think, that the mules were not "furnished" by Falkner to Calhoun within the meaning of the statute (article 5475, Vernon's Statutes), and therefore that Falkner did not have a landlord's lien on them.

Among the items of indebtedness claimed by Falkner against Calhoun was one for $66.55 on account of supplies, consisting of dry goods, which he claimed he furnished Calhoun to enable him to make crops grown on the land. The contention of the mercantile company with reference to this is that it appeared as a matter of law from the testimony that the goods were not "furnished" by Falkner to Calhoun within the meaning of the statute. We do not think it so appeared, and therefore overrule the contention. The sufficiency of the verdict to support the judgment as to this item is attacked, but we do not think it was insufficient.

[3] Falkner claimed that he had furnished Calhoun 30 bushels of corn worth $30 to enable him to make crops on the land in 1913. He proved that Calhoun owed him that quantity of corn as rent for the year 1912, and that he permitted Calhoun to keep the corn instead of delivering same to him on Calhoun's representation that he "would need it to use that winter and in making a crop for the year 1912." The jury found in favor of Falkner "for $53.26 for cotton seed and corn." If the finding as to the corn referred to the 30 bushels above mentioned, then the finding that Falkner had a landlord's lien on the property the mercantile company and Tarver, Steele & Co were charged with converting to secure the sum due for it plainly was unauthorized. The 30 bushels of corn was not a part of the crops grown on the land during the year 1913, and Falkner did not "furnish" same to Calhoun. What he did was to waive a right he had to have Calhoun turn it over to him in 1912, and grant Calhoun an extension of time in which to pay the amount of rent represented by the corn. If the finding did not refer to that corn, then it was wholly without evidence to support it; for there was no testimony showing Falkner to be entitled to recover anything of Calhoun on account of corn grown by him on the land in 1913. And so there was no evidence showing that Falkner was entitled to recover on account of

cotton seed grown on the land. On the contrary, the testimony in the record indicates that Falkner had received all that was due him by Calhoun on account of corn and cotton seed grown by the latter during the year 1913.

The judgment will be so reformed as to adjudge a recovery by Falkner against the mercantile company and Tarver, Steele & Co. of $66.55, and a recovery over by Tarver, Steele & Co. against the mercantile company of a like sum, and as so reformed will be affirmed.